UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BAT BLUE CORPORATION,**<br><br>Plaintiff,<br><br>v.<br><br>**SITUS HOLDINGS, LLC,**<br><br>Defendant. | Civ. No. 2:15-08513 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Bat Blue Corporation ("Bat Blue") has asserted contractual and quasi-contractual claims against Defendant Situs Holdings, LLC ("Situs"). This matter comes before the Court on Situs' motion to dismiss made pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons that follow, Situs' motion will be **GRANTED in part and DENIED in part**.

**I.   BACKGROUND**

Unless otherwise noted, the following facts are alleged in Bat Blue's complaint. Bat Blue is a Delaware corporation that provides cloud-based network services. *See* Complt. at ¶¶ 1,6. On September 4, 2012, Bat Blue entered into the Bat Blue Master Services Agreement ("MSA") with Situs, a limited liability company organized and existing under the laws of Texas. *See id*. at ¶¶ 2, 5. Under the MSA, the parties agreed that Bat Blue would provide Situs with certain installation and activation services in connection with the latter's cloud-based network systems. *See id*. at 5. The MSA further provided that Situs' requests for specific products and services would be governed by separate purchase order forms ("Order Forms"). *See* MSA at §§ 1,5. For example, when Situs sought to purchase ports in connection with a certain service order, it was separately invoiced for those items. *See* Complt. at ¶6, Ex. A.[1]

The MSA also includes provisions concerning term length, renewal, and termination. First, the MSA "shall commence on the Effective Date and continue for a

---

[1] Although not specifically mentioned in the complaint, if a term in the MSA conflicts with a term in an Order Form, the latter prevails. MSA at § 1.

period of three (3) years from such date." MSA at § 2. Beyond that three year period, the MSA "shall then automatically renew for successive one year terms ("Additional Term"), unless and until [the MSA] is terminated by either Party in accordance with Paragraph [13][2] hereof." *Id*. The same section further provides that "[i]f either party elects not to renew [the MSA], in whole or in part, for a subsequent Service Term, it must provide ninety (90) days advanced written notification to the other Party." *Id*.

Section 13(c) of the MSA explains what happens in the event of a termination. Specifically, it provides the following:

> In the event [Situs] terminates [the MSA] for any reason, other than pursuant to an Event of Default under Section 12 . [Situs] shall: (i) make full payment to Bat Blue for the amounts due and owing on any Products ordered by [Situs] from Bat Blue and/or Services rendered to [Situs] by Bat Blue pursuant to [the MSA]; (ii) pay a cancellation fee to Bat Blue which shall be equal to one hundred percent (100%) of all future committed revenue as calculated in Exhibit C any and addendums thereto, for all (1) Telecommunications Service, (2) IP Services, (3) Cloud Services and (4) Professional Services, which Bat Blue would have provided to [Situs] but for the termination of [the MSA]; and (iii) to the extent that Bat Blue purchases for or otherwise provides Products to [Situs] under [the MSA], pay to Bat Blue an equipment cancellation fee in the amount as set forth in Exhibit C.

MSA at § 13(c). As the relevant three year term approached its end, Situs informed Bat Blue that it was exercising its right not to renew the MSA. At issue in this case are certain Order Forms placed by Situs prior to its decision not to renew. According to Bat Blue, the Order Forms at issue sought "various products at various Situs locations" and are reflected in a July 9, 2015 invoice labeled "Invoice #71185." *See* Complt. at ¶ 6.[3] After not receiving payment initially, Bat Blue notified Situs that its non-renewal of the MSA "did not relieve it of its responsibility and obligation to pay for the ports it ordered." *Id*. at ¶ 9. In other words, the non-renewal triggered the termination provisions of Section 13(c), which requires Situs to make certain payments. Eventually, Bat Blue sent a "final demand notice," which warned that if Situs failed to pay, "Bat Blue would "(i) pursue collection of all amounts due on the account, plus applicable interest and (ii) disconnect the ports that are the subject of the purchase orders." Complt., Ex. A.

---

[2] Section 2 of the MSA cross-references Section 12, but the parties agree that they intended to cross-reference Section 13.

[3] The parties appear to dispute the nature of the items reflected in the July 9, 2015 invoice. At times Bat Blue appears to contend that the items reflect "ports," *i.e.*, "products," purchased in connection with a particular network. At other times, Bat Blue refers to those items as "service orders." *See* Complt., Ex. B. Situs, on the other hand, claims that Bat Blue is seeking "monthly service fees" for work it would have done had the MSA not been terminated. *See* Situs Mot. at 2.

To this date, Situs has refused to adhere to Bat Blue's demands. As promised, Bat Blue has now filed suit seeking $459,463.36, which is the amount reflected in Invoice #71185. Additionally, Bat Blue seeks interest, costs and expenses it has incurred in connection with this suit, including reasonable attorneys' fees. The complaint asserts the following causes of action: (1) breach of contract; (2); book account for products ordered, delivered and invoiced; (3) unjust enrichment; (4) beach of duty of good faith and fair dealing; and (5) promissory estoppel. Situs now moves to dismiss.

## II.   DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

   1. Count 1: Breach of Contract

Situs argues that Bat Blue's contract claim must fail because the terms of the MSA unambiguously provide that a non-renewal does not constitute a "termination," which means the payout provisions of Section 13(c) do not apply. Bat Blue argues the opposite: the MSA unambiguously provides that a decision not to renew will trigger Section 13(c)'s payout clause. In the alternative, Bat Blue argues that dismissal at the pleading stage is not warranted because the relevant terms of the MSA are ambiguous.

The MSA is governed by New York law. *See* MSA § 23(i). In New York, the elements of a breach of contract claim are (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and

(4) damages. *See Swan Media Group, Inc. v. Staub*, 841 F.Supp.2d 804, 807 (S.D.N.Y. 2012) (citing *Eternity Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 177 (2d Cir. 2004)). In deciding whether there has been a breach of contract, "[i]t is axiomatic that a contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language employed." *Breed v. Insurance Co. of North America*, 385 N.E.2d 1280, 1282 (N.Y. 1978) (quoting *Morlee Sales Corp v. Manufacturers Trust Co.*, 172 N.E.2d 280, 282 (1961)). Consistent with that rule, a contract should be construed so as to give effect to all its terms and not to render any of those terms meaningless. *See CP III Rincon Towers, Inc. v. Cohen*, 13 F.Supp.3d 307, 320 (S.D.N.Y. 2014). Moreover, where a contract is clear and complete, it should be enforced according to the terms contained within the four corners of the document. *See R/S/ Associates v. New York Job Development Auth*. 771 N.E.2d 240, 242 (N.Y. 2002) (citing *Reiss v. Fin. Performance Corp.*, 764 N.E.2d 958 (N.Y. 2001)). In other words, extrinsic evidence generally should not be considered. *See id*. (citing *W.W.W. Assoc., Inc. v. Giancontrieri*, 566 N.E.2d 639, 642 (N.Y. 1990)).

In some cases, however, a court may determine that the terms contained within the four corners of a contract are ambiguous. *See Wallace v. 600 Partners Co.*, 658 N.E.2d 715, 548 (N.Y. 1995) ("The question [of] whether a writing is ambiguous is one of law to be resolved by the courts.") (citations omitted). Where the terms of a contract are ambiguous, parties may use extrinsic evidence to demonstrate intent. *See, e.g., Sarinsky's Garage Inc. v. Erie Ins. Co.*, 691 F.Supp.2d 483, 486 (S.D.N.Y. 2010) (citing *Andy Warhol Found. For Visual Arts, Inc. v. Fed. Ins. Co.*, 189 F.3d 208, 215 (2d Cir. 1999)).

The Court rejects Situs' view that the terms of the MSA unambiguously support its position. To the contrary, the MSA is ambiguous as to whether a non-renewal constitutes a termination. Consequently, this issue cannot be determined at the motion to dismiss stage.

The Court rests its conclusion on several points. First, the provision concerning non-renewal is located in Section 2 of the MSA, but is nowhere to be found in Section 13, which deals exclusively with termination.[4] This would appear to support Situs' position that "termination" does not encompass a decision not to renew. However, Section 13(c) is indisputably broad, indicating that Bat Blue is entitled to a payout in the event Situs "terminates [the MSA] *for any reason*…." *See* MSA at § 13(c) (emphasis added).[5]

---

[4] Moreover, when Section 2 does mention termination, it cross references Section 13.

[5] Bat Blue further argues that Situs is required to submit payment pursuant to the relevant Order Form and that the terms of an Order Form will always trump the terms of the MSA. *See* Bat Blue Opp. at 13. The Court will not consider this argument because Bat Blue did not even articulate the terms of the Order Form, let alone attach the Order Form to its complaint. Instead, Bat Blue merely attached the invoice that allegedly reflects the existence of the order. Moreover, Bat Blue's opposition refers to several other provisions of the MSA that, in its view, support its breach of contract claim. *See id*. at 5-6. Again, Bat Blue's complaint does not allege how Situs breached those provisions, nor does it allege that Bat Blue is seeking to recover under those provisions. In fact, the complaint makes no mention of

Therefore, it could be argued that a payout is required if Situs ends the contractual relationship in any way, including in the case of a non-renewal. Finally, the terms "renew" and "terminate" are not defined terms. Therefore, it is difficult to discern whether the decision not to renew constitutes a termination within the meaning of Section 13(c). While a contractual term is not necessarily ambiguous simply because it is undefined, *see Fantasia Accessories, Ltd. v. Northern Assurance Co. of America*, No. 01. Civ. 663 (AGS), 2001 WL 1478807, *4 (S.D.N.Y. Nov. 20, 2001), the Court finds that the failure to define those terms has further muddied the waters of what is an already ambiguous contract. *See In re Ancillary Receivership of Reliance Ins. Co.*, 55 A.D.3d 43, 47 (N.Y. App. Div. 1st Dep't 2008).

"At the motion to dismiss stage, courts must bear in mind that 'if a contract is ambiguous as applied to a particular set of facts, a court has insufficient data to dismiss a complaint for failure to state [a] claim.'" *Deutsche Bank Nat. Trust. Co. v. Morgan Stanley Mortg. Capital Holdings*, LLC, 97 F.Supp.3d 548, 552 (S.D.N.Y.) (quoting *Bayerische Landesbank, N.Y. Branch v. Alladin Capital Mgmt. LLC*, 692 F.3d 42, 56 (2d Cir. 2012)). In light of the above, the Court **DENIES** Situs' motion to dismiss Count 1 of the complaint.[6]

2. Count 2: Book Account for Products Ordered, Delivered, and Invoiced

Count 2 appears to be a claim for an open book account. There is scant New York authority pertaining to such a claim. The authority that is out there, however, uniformly states that a claim for an open book account can exist only by statute; and because no such statute exists in New York, the claim is subject to dismissal. *See, e.g., Care Environmental Corp. v. M2 Technologies, Inc.*, No. CV-05-1600 (CPS), 2006 WL 148913, *7 (E.D.N.Y. Jan. 18, 2006); *Waldman v. Englishtown Sportswear, Ltd.*, 92 A.D.2d 833, 836 (App. Div. 1st Dep't 1983). Consequently, the Court **GRANTS** Situs' motion to dismiss Count 2 of the complaint.

3. Count 3: Unjust Enrichment

Bat Blue has failed to state a claim for unjust enrichment. In New York, a claim for unjust enrichment contains the following elements: (1) that the defendant was enriched; (2)

---

those provisions at all. *Cf. Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (complaint cannot be amended by the briefs in opposition to a motion to dismiss) (citations and quotations omitted).

[6] Situs further argues that even if there were a breach of the MSA, Count 1 must be dismissed because Bat Blue has not plead ascertainable damages. The Court disagrees. Damages are a necessary element of any breach of contract claim. *See, e.g., Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996) (applying New York law). Bat Blue contends that Situs has breached the MSA by failing to pay monies owed under Section 13(c). It therefore follows that had there been no breach, Bat Blue would have received those payments. These allegations sufficiently plead the existence of damages. *See, e.g., Liebowitz v. Elsevier Science LTD.*, 927 F.Supp. 688, 704 (S.D.N.Y. 1996) (recognizing a claim for damages arising from defendants' failure to make payments due under a contract).

5

that the enrichment was at the plaintiff's expense; and (3) that "the circumstances dictate in equity and good conscience, the defendant should be required to turn over its money to the plaintiff." *Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 797 F.2d 70, 79 (2d Cir. 1986) (citing *McGrath v. Hilding*, 363 N.E.2d 328, 330 (N.Y. 1977)). As mentioned previously, it is unclear as to whether Situs actually received any goods or services in connection with Invoice #71185. Bat Blue suggests that the invoice encompasses ports that Situs received, whereas Situs contends that the complaint is seeking payment for services Bat Blue never provided. In any event, the complaint does not allege specific facts indicating that Situs actually received the goods and/or services at issue in this case. Further, assuming Situs did receive goods and/or services, the complaint fails to specify what those goods and/or services were. *See, e.g., Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (in order to state an unjust enrichment claim, plaintiff must "establish [a] *specific* and direct benefit") (emphasis added). Consequently, the Court **GRANTS** Situs' motion to dismiss Count 3 of the complaint.

4. Counts 4: Beach of Duty of Good Faith and Fair Dealing

In New York, the elements of a claim for the breach of the duty of good faith and fair dealing are the following: "(1) defendant must owe plaintiff a duty to act in good faith and conduct fair dealing; (2) defendant must breach that duty; and (3) the breach of duty must proximately cause plaintiff's damages." *See, e.g., Washington v. Kellwood Co.*, No. 05 Civ. 10034 (DAB) 2009 WL 855652, *6 (S.D.N.Y. Mar. 29, 2004) (citations omitted). However, in cases where an express contract already exists, such a claim can survive only where the plaintiff alleges a duty that exists independently from the agreement. *See, e.g., Goldblatt v. Englander Communications, L.L.C.*, No. 06 Civ. 3208 (RWS), 2007 WL 148699, *5 (S.D.N.Y. Jan. 22, 2007) (dismissing breach of implied covenant of good faith claim that was merely premised on the failure to honor the terms of an express agreement). Bat Blue has failed to allege any duty that exists outside the MSA or any related Order Form. Accordingly, the Court **GRANTS** Situs' motion to dismiss Count 4 of the complaint.

5. Count 5: Promissory Estoppel

The elements of a promissory estoppel claim are the following: "(1) an unambiguous promise; (2) reasonable and foreseeable reliance on the promise; and (3) injury as a result of the reliance." *Pearce v. Manhattan Ensemble Theatre, Inc.*, 528 F.Supp.2d 175, 181 (S.D.N.Y. 2007) (citing *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000)). Bat Blue argues that these elements have been met because (1) Situs made the unambiguous promise to pay by placing the order; (2) Bat Blue reasonably relied on that promise by purchasing products in connection with the order; and (3) Bat Blue was injured because Situs refused to pay for those products after deciding not to renew the MSA. The Court finds, however, that Bat Blue has failed to allege the existence of an unambiguous promise. Bat Blue does not allege that Situs made any promises apart from what it agreed

to do by entering into the MSA.  As previously stated, the terms of the MSA are ambiguous with respect to the central issue in this case:  does a non-renewal under Section 2 constitute a "termination" within the meaning of Section 13?  Therefore, it cannot be said that Situs unambiguously promised to pay Bat Blue under Section 13 in the event that it declined to renew the MSA.  The Court therefore **GRANTS** Situs' motion to dismiss Count 5 of the complaint.

### III.    CONCLUSION

For the foregoing reasons, Situs' motion to dismiss is **GRANTED in part and DENIED in part**.  Specifically, the motion is **DENIED** as to Count 1, but **GRANTED** as to Counts 2 through 5.

　　　　　　　　　　　　　　　　　　　　　　/s/ William J. Martini
　　　　　　　　　　　　　　　　　　　　**WILLIAM J. MARTINI, U.S.D.J.**

**Date: May 26th, 2016**